UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| *PERFICIENT, INC.* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. |
| | ) | |
| *MELANIE HOFFMAN* | ) | |
| *Hold Service* | ) | |
| | ) | |
| *SLALOM, LLC* | ) | |
| *Serve*: CSC-Lawyers Incorporating | ) | |
| Service Company | ) | |
| 221 Bolivar St | ) | |
| Jefferson City, MO 65101 | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

COMES NOW Plaintiff Perficient, Inc. ("Perficient"), by and through its attorneys Sandberg Phoenix & von Gontard P.C., and for its action for damages against Defendant Melanie Hoffman ("Hoffman") and Slalom, LLC ("Slalom," collectively "Defendants"), hereby alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

### A.    Parties

1.    Perficient is a corporation organized under the laws of the State of Delaware having its principal place of business in St. Louis County, Missouri.  Perficient is licensed and qualified to transact business in the State of Missouri.

2.    Hoffman resides at is a citizen of the State of Florida, and has engaged in business activities in Missouri, including the activities complained of herein.

20271656.v1

3.      Slalom is a limited liability company organized under the laws of the State of Colorado having its principal place of business in Seattle, Washington.  Slalom is licensed and qualified to transact business in the State of Missouri.

B.      **Jurisdiction and Venue**

4.      This Court has jurisdiction on the basis of agreement between the parties; as set forth in greater detail below, Perficient brings a claim for breach of contract in relation to the Restricted Stock Award and Non-Competition Agreement entered into by Perficient and Hoffman ("Non-Competition Agreement"), which provides in relevant part:

> 32.     **Submission to Jurisdiction**. ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY MAY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA FOR THE EASTERN DISTRICT OF MISSOURI OR THE COURTS OF THE STATE OF MISSOURI LOCATED IN THE COUNTY OF ST. LOUIS, AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING. SERVICE OF PROCESS, SUMMONS, NOTICE OR OTHER DOCUMENT BY MAIL TO SUCH PARTY'S ADDRESS SET FORTH HEREIN SHALL BE EFFECTIVE SERVICE OF PROCESS FOR ANY SUIT, ACTION OR OTHER PROCEEDING BROUGHT IN ANY SUCH COURT. THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR ANY PROCEEDING IN SUCH COURTS AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

5.      A true and accurate copy of the most recent Non-Competition Agreement between Perficient and Hoffman is attached hereto as *Exhibit 1*[1] and incorporated herein by reference.

---

[1] Perficient and Hoffman agreed to the Non-Competition Agreement on an annual basis, as set forth below.  Exhibit 1 is the most recent effective version of the agreement.

6.      Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.

7.      This Court has personal jurisdiction over Hoffman pursuant to section 506.500.1(2) RSMo because she engaged in conduct in Missouri giving rise to the facts and circumstances at issue in this lawsuit and has sufficient minimum contacts with Missouri to satisfy any due process concerns.

8.      In addition, this Court has personal jurisdiction over Hoffman pursuant to the submission to jurisdiction clause contained in the Non-Competition Agreement. *Exhibit 1*.

9.       This Court has personal jurisdiction over Slalom pursuant to section 506.500.1(1)-(3) RSMo because it transacts business within Missouri, has committed multiple torts against a Missouri plaintiff, tortuously interfered with contracts entered in Missouri, and has sufficient minimum contacts with Missouri to satisfy any due process concerns.

10.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Perficient's claims occurred in this District, and by virtue of the Non-Competition Agreement between Perficient and Hoffman.

<u>**FACTS COMMON TO ALL COUNTS**</u>

11.     All preceding paragraphs are incorporated by reference.

**A.      Perficient's technology consulting and implementation services**

12.     Perficient is in the business of providing technology consulting and sales optimization services and software products to its business customers.  Perficient's services include consulting regarding technology solutions and software implementation services for a variety of business software products manufactured by third-party software vendors.

3

13.     The business software for which Perficient performs its implementation services typically cannot be used by the end user business customer out of the box; it needs to be formatted to operate with the end user's systems, hardware, and data; Perficient specializes in this implementation work.   Perficient also performs top-down software solution design consultation involving creating new software solutions from multiple sources and platforms.

14.     Perficient generates a portion of sales for its implementation services direct through sales to the end user through Perficient's executives and sales representatives ("direct sales").

15.     Perficient also generates a portion of sales for its implementation services through its referral relationships with the software vendors; after the vendor sells its software to the end user, it refers the end user to Perficient for the required implementation ("channel sales").

16.     Slalom is also a technology consulting firm.   Its technology platform partners involve many of the same platforms utilized by Perficient for its consulting and implementation work, including Amazon Web Services, Google Cloud, Microsoft, and Salesforce.   See: https://www.slalom.com/.   Similarly, Slalom's service offerings within those platforms include many of the same offerings as Perficient, including cloud architecture, DevOps and security, product engineering, customer relationship management, UX/UI design, data architecture, artificial intelligence and machine learning, and data visualization and storytelling.   See: https://www.slalom.com/what-we-do.

17.     Perficient and Slalom are competitors for technology consulting services across a broad spectrum of software and technology solutions within these platforms and service offerings.

### B.  Hoffman's employment by Perficient

4

18.     A portion of Perficient's software implementation services are managed in national business units, which are devoted to the sale and implementation of a specific software platform, such as Microsoft or Salesforce.

19.     However, a portion of Perficient's business presently and during all times relevant to this action was the marketing, distribution, and sale of software implementation services on a regional basis.  Through its regional offices, Perficient offers the entire suite of its software implementation services.  The regional offices therefore have the ability and responsibility to sell and implement services across Perficient's entire portfolio of offerings and platforms.

20.     Hoffman worked for Perficient from April 2011 until her resignation in June 2022.  From April 2011 to June 2013, her job title was Senior Project Manager.  From June 2013 to August 2019, her job title was Director.  From August 2019 until her resignation, Hoffman's title was Managing Director for Perficient's Southeast Region, which included Virginia, North Carolina, South Carolina, Georgia, Florida, Tennessee, and Alabama ("Southeast Region").

21.     As the Managing Director for Perficient's Southeast Region, Hoffman had the responsibility to manage the entirety of Perficient's regional sales and implementation services for the Southeast, including ultimate supervisory authority for all sales personnel and implementation/consulting personnel assigned to the Southeast Region.

22.     Hoffman and the employees reporting to her worked out of Perficient's offices located in Atlanta and Charlotte.   Her business unit was also responsible for servicing clients throughout the entire Southeast.  The territory under her responsibility included Florida.

23.     As a Director and Managing Director, in addition to her billable assignment responsibilities for software consulting and implementation projects and management duties, Hoffman participated in non-billable tasks related to sales and business development for

20271656.v1

Perficient's implementation practices in the Southeast Region, including sales, sales support, practice-building, and responses to requests for proposals.

24.     As a Director and Managing Director, in addition to her management and leadership responsibilities, Hoffman was responsible for personally interfacing with Perficient's customers and business partners in two ways: (1) Hoffman met with the end-user customer for pre-sales, designing  software solutions, sales support, and to gather business and technical requirements for projects, and (2) Hoffman interfaced directly with Perficient's software vendor partners, and their employees and executives, to position Perficient for further channel sales.

25.     As a Managing Director, Hoffman also had ultimate responsibility for managing the profit and loss ("PNL") statement for the Southeast Region, including the responsibility to manage all income and expenses, as well as the responsibility to create strategies to increase revenue and profitability for her region.

**C.  Hoffman's authorship and access to Perficient's confidential information.**

26.     During Hoffman's employment, she had access and exposure to all of Perficient's solutions, sales, and marketing strategies and the customers targeted by Perficient for those products and services within the Southeast Region.

27.     Her role as Managing Director for Perficient's Southeast Region afforded Hoffman access to Perficient's planned strategies, solutions, and marketing for its entire portfolio of offerings within the Southeast Region.

28.     Additionally, as Managing Director, Hoffman served as the primary author for Perficient's business development, marketing, and growth strategies within the Southeast Region.

6

29.     Hoffman served as the primary author of Perficient's business plans and marketing strategies for the region.  Specifically, she authored and routinely updated a document titled "$100 Million Plan" for the Southeast Region, a business strategy plan updated quarterly for presentation to her supervisor and presented annually to Perficient Chief Operating Officer Thomas Hogan.  A selected and redacted excerpts from the $100 Million Plan for 2021 are attached as *Exhibit 3*.

30.     The $100 Million Plan includes a slide titled "Southeast Region Territory Strategy," which includes Florida within the region and addresses specific growth strategies within Florida.  Hoffman authored Perficient's growth strategies within Florida for her team. *Exh. 3*.

31.     The $100 Million Plan discussed sensitive and confidential topics including current client needs and existing work, prospective clients, growth strategies, organizational and staffing needs, Perficient's overall approach to the territory, marketing events, and software partner relationships.

32.     The information and knowledge obtained by Hoffman during the course of her employment was and is exactly the type of confidential trade secrets that, if used by Hoffman for the benefit of a competitor, would cause significant and irreparable harm to Perficient.

33.     Hoffman also directly participated in preparing bids, proposals, responses to requests for proposals ("RFPs"), and other sales support materials for business Perficient was trying to win, for both direct sales and channel sales.

34.     Hoffman also had responsibility reviewing and finalizing scope of work ("SOW") for individual technology consulting projects, which required her to analyze client needs, assign

7

appropriate Perficient personnel, and make adjustments to the pricing and profit margin of the project while working within Perficient's margin guidelines.

35.     In conjunction with these responsibilities, Hoffman had access to significant, confidential materials of Perficient, including current and prospective customer lists; the proprietary, internal program, polices and written strategies for new business development; the proprietary, internal programs, policies and written strategies for business and customer maintenance; and the list of contacts with the customer targets.

36.     These programs, policies, written strategies, target customer lists, and contact lists all are maintained as highly confidential within Perficient and provide Perficient with a significant strategic advantage in the development and maintenance of its business.

37.     Therefore, in connection with Hoffman' employment, Hoffman and Perficient executed two relevant contracts governing Perficient's confidential information; first, upon her promotion to Director, Hoffman executed the Confidentiality and Intellectual Property Assignment Agreement ("Confidentiality Agreement"), effective July 17, 2013.  A true and accurate copy of the Confidentiality Agreement is attached as *Exhibit 2*.

38.     Further, as a Director and later Managing Director, Hoffman had substantial additional responsibility and access to Perficient's confidential information that non-management Perficient employees.

39.     As a Director and Managing Director, Hoffman had access to Perficient's confidential information, including access to password-protected databases and servers.

40.     Perficient takes steps to restrict access to company-wide confidential information, including password-protected login to certain databases and servers, which exclude non-management employees from sensitive company information.

41.     Hoffman further participated in routine management-level conference calls, discussing, *inter alia*, company-wide strategy, sales, Perficient margin goals, and customer targets.

42.     Therefore, in order to protect Perficient's confidential information, Hoffman and Perficient entered into the Non-Competition Agreement referenced above, first effective December 3, 2013 and renewed annually, last renewed effective January 19, 2022.[2]

43.     As consideration for her agreements to covenants contained in the Non-Competition Agreement and access to Perficient's confidential information, Hoffman received substantial additional compensation in addition to her ordinary salary in the form of annual awards of Perficient restricted stock.

44.     The Non-Competition Agreement provides for Hoffman's electronic acceptance of its terms by acceptance of the restricted stock awards:

> ***By your electronic acceptance of this Restricted Stock Award you agree to the terms and conditions outlined in the Restricted Stock Award Agreement and the 2012 Long Term Incentive Plan.***
>
> *Exhibit 1*, execution page (emphasis in original).

45.     In total, Hoffman received 11,833 shares of Perficient restricted stock, which vested under the schedule set forth in the Non-Competition Agreement.

46.     Hoffman accepted the restricted stock awards for each year she was eligible as a Director and Managing Director.

47.     Each of the contracts was executed and effective in Missouri.

---

[2] The parties entered into a renewed Non-Competition Agreement every year upon issuance of Perficient stock to Hoffman.  The relevant substantive terms of each annual Non-Competition Agreement are identical.  Accordingly, all quotations and references are to *Exhibit 1*, the most recently issued document, in effect at the time of Hoffman's termination of employment.

20271656.v1

### D.  The Non-Competition Agreement

48.     The Non-Competition Agreement includes, among other things, an acknowledgement from Hoffman that, in her position as Director and Managing Director, she would receive trade secrets and other Confidential Information, which the Non-Competition Agreement defined as: "any and all proprietary information and materials, as well as all trade secrets, belonging to the Corporation, its affiliates, its customers, or other third parties who furnished such information, materials, and/or trade secrets to the Corporation with expectations of confidentiality." *Exhibit 1*, ¶ 15(b).

49.     Confidential Information under the Non-Competition Agreement falls under five categories, regardless of whether such information or material is explicitly identified or marked as confidential or proprietary:

    a.     Inventions and technical information of the Corporation, its affiliates, its customers or other third parties, including computer programs, software, databases, know-how, code, programming techniques, discoveries, inventions, designs, developments, improvements, copyrightable and patentable material, original works of authorship, and trade secrets;

    b.     non-public business information of the Corporation, its affiliates or its customers or other third parties including business plans and strategies, compensation data, non-public financial results and information, non-public sales, marketing, sales volume and profitability data (including by office, business partner, or product), pricing, margins, costs, bidding and marketing strategies, information regarding the skills, compensation and contact information of employees and contractors of the Corporation or its Subsidiaries, and similar items;

    c.     Corporation and Subsidiary customer lists and customer and prospect information (including sales volume, purchasing history, key contacts, needs, plans, requirements, expectations, and upcoming projects);

    d.     information relating to future plans of the Corporation, its affiliates or customers, including marketing strategies, sales plans, pending projects and proposals, research and development efforts and strategies, and similar items;

20271656.v1

> e.     other information of the Corporation, its affiliates, its customers or other third parties that grants an advantage over others in the industry by virtue of not being generally known.

*Exhibit 1*, ¶ 15(b).

50.     The Non-Competition Agreement conditioned Hoffman's employment and receipt of certain Perficient stock awards on her acknowledgment that her position entailed necessary access to Confidential Information as defined by the agreement:

> In the course and scope of employment with the Corporation or its Subsidiary, Employee will use and have access to Confidential Information (as defined below) belonging to the Corporation or its Subsidiaries above and beyond any Confidential Information previously received by Employee and will associate Employee with the goodwill of the Corporation and its Subsidiaries above and beyond any prior association of Employee with that goodwill. In return, Employee agrees at all times during the term of Employee's employment with the Corporation or its Subsidiary and thereafter not to directly or indirectly use or disclose (except as may be required for Employee to perform Employee's duties for the Corporation or its Subsidiary) any Confidential Information without the prior and specific written authorization of the Corporation, and not to use Employee's association with the Corporation's goodwill for the benefit of any person or entity other than the Corporation or its Subsidiaries.

*Exhibit 1*, ¶ 15(a)

51.     In order to enforce Hoffman's promises regarding Confidential Information and to protect Perficient's trade secrets, employee relationships, and customer relationship and contacts, Hoffman agreed to certain covenants to continue post-termination, including the covenant not to compete, the covenant not to solicit Perficient's customers or employees, and the covenant not to disclose Confidential Information and trade secrets.

### i.     The non-competition covenant

52.     Hoffman agreed in the Non-Competition Agreement not to engage in a competing business with Perficient, or to perform competing duties, for a period of twenty-four months following termination of her employment:

> (iii)     engage in a Competing Business anywhere within the Restricted Area;

(iv)    perform any Competitive Duties (as an employee, consultant or otherwise) anywhere within the Restricted Area for any Competing Business[.]

*Exhibit 1*, ¶ 15(e).

53.    "Competing Business" is defined to include: "any person or entity that offers, markets, provides or is demonstrably planning to offer, market or provide any Competitive Products or Services." *Exhibit 1*, ¶ 2(e).

54.    "Competitive Duties" are defined to include:

duties on behalf of a Competing Business that relate to Competitive Products or Services in any way and:  (i) are substantially similar to the duties the Employee performed or hereafter performed for the Corporation or its Subsidiaries; (ii) involve management (in any capacity), operation, advice or control of a Competing Business; (iii) are performed in the capacity of a director, officer, general partner, manager or executive of a Competing Business and relate to Competitive Products or Services; or (iv) involve the sale or marketing of any Competitive Products or Services.

*Exhibit 1*, ¶ 2(f).

55.    "Competitive Products or Services" are defined to include:

any products or services that are of a type or nature that are an alternative to, the same, as similar to any of the products or services being offered, sold, provided, marketed, or actively developed (as evidenced by internal company documents and records of the Corporation or its Subsidiaries) by the Corporation or any of its Subsidiaries as of the date hereof or as of the date of the termination of Employee's employment with the Corporation or one of its Subsidiaries for any or no reason (or, if applicable, as of the time prior thereto when Employee seeks to engage in any activity prohibited by this Agreement).

*Exhibit 1*, ¶ 2(g).

56.    In conjunction with the non-competition covenant, Hoffman also agreed to disclose her subsequent, post-termination employment relationships:

For a period of twenty-four (24) months immediately following the termination of Employee's employment, Employee promises to disclose (within seven calendar days) to the Corporation in writing any employment, consulting, or other service relationship Employee enters into after the termination of Employee's Service.

*Exhibit 1*, ¶ 15(g).

### ii.   The non-solicitation covenant

57.     Hoffman additionally agreed in the Non-Competition Agreement not to participate directly or indirectly in the solicitation of any employee, contractor, or consultant of Perficient for a period of twelve months following her separation from Perficient:

> directly or indirectly: solicit, recruit, hire, or otherwise interfere with the employment or engagement of any employee, contractor, or consultant of the Corporation or any Subsidiary who was an employee, contractor or consultant of the Corporation or any Subsidiary during the last twelve (12) months of Employee's employment with the Corporation or any Subsidiary.
>
> *Exhibit 1*, ¶ 15(e)(ii).

58.     Additionally, Hoffman agreed not to solicit any of Perficient's clients or prospective clients for competitive products or services for a period of twenty-four months following termination:

> directly or indirectly: (A) solicit (or assist another in soliciting) any Covered Client or Prospective Client for Competitive Products or Services, or (B) provide (or assist in another in providing) Competitive Products or Services to any Covered Client or Prospective Client[.]
>
> *Exhibit 1*, ¶ 15(e)(i).

59.     "Covered Client" includes any business partner, client or customer of Perficient with whom Hoffman or someone under Hoffman's management had contact during the last twelve months of her employment. *Exhibit 1*, ¶ 2(i).

60.     "Prospective Client" includes any identified person, entity, or business concern that Perficient spent time and/or resources courting or developing as a potential user of Perficient's products or services, or had entered into specific discussions with Perficient regarding the potential use of services or products. *Exhibit 1*, ¶ 2(m).

### iii.   The non-disclosure covenant

61.     Hoffman further agreed not to disclose, divulge or communicate to any person, firm or entity the confidential information, to return it upon termination of the parties' relationship, and that any disclosure would cause irreparable harm to Perficient and its present and future business interests.

62.     Specifically, Hoffman agreed that for twenty-four months following termination, she would not:

> fail to abide by and comply with the restrictions on the use and disclosure of Confidential Information and trade secrets contained herein or in any other agreement now or hereafter entered into by the Employee with or for the benefit of the Corporation and its Subsidiaries, including, but not limited to, the Confidentiality Agreement.

*Exhibit 1*, ¶ 15(e).

### iv.   Necessity of the covenants

63.     For each of the covenants in the Non-Competition Agreement, Hoffman agreed that the restrictions were necessary, as she agreed irreparable damage will result to Perficient in the event of the breach of any covenant. *Exhibit 1*, ¶ 16(a).

64.     Hoffman further acknowledged that the restrictions contained in Non-Competition Agreement were reasonable, did not impose a greater restraint than is necessary to protect the Confidential Information, goodwill, and other legitimate business interests of Perficient, and were not unduly burdensome to Employee. *Exhibit 1*, ¶ 16(b).

65.     Hoffman further acknowledged that Perficient competes through North America and the scope of the limitations is reasonable and necessary for the protection of Perficient's Confidential Information, goodwill, and other legitimate business interests. *Exhibit 1*, ¶ 16(b).

20271656.v1

66.     Hoffman further agreed that the restrictions allowed her an adequate number and variety of employment alternatives, based on his varied skills and abilities, and she represented that she was willing and able to engage in other employment not prohibited by the Non-Competition Agreement. *Exhibit 1*, ¶ 16(b).

### v.     Remedies

67.     Hoffman also agreed that in the event of his breach of any of the covenants in the Non-Competition Agreement, Perficient would be entitled to its reasonable costs and attorneys' fees:

> **Remedies.**  If the Corporation incurs legal fees and other expenses to enforce this Agreement and/or seek redress for any violation, Employee promises and agrees to pay all costs, court costs, fees and expenses, including reasonable attorneys' fees, incurred by the Corporation to enforce this Agreement whether by an action to enforce specific performance or for damages for Employee's breach or otherwise and/or recover and collect damages for any violation, whether or not litigation is commenced.  This is in addition to and not in lieu of any other remedies which the Corporation may have for any violation of this Agreement.
>
> *            *            *
>
> **Counterparts; Missouri Governing Law; Attorneys' Fees** This Agreement and all other aspects of the Employee's employment shall be governed by and construed and interpreted in accordance with the internal laws of the State of Missouri without reference to conflicts of law principles, or any rule or decision that would defer to the substantive laws of another jurisdiction. In the event a court of competent jurisdiction determines that the Employee breached this Agreement, including the covenants of confidentiality and non-disclosure contained in this Agreement, in any manner, the Corporation shall also be entitled to its reasonable costs and attorneys' fees associated with any legal or equitable action against the Employee relating to the Employee's breach of this Agreement, including a breach of the covenants of confidentiality and non-disclosure contained in this Agreement.

*Exhibit 1*, ¶ 13, 29.

### E.  The Confidentiality Agreement

68.　　　In addition to the covenants contained in the Non-Competition Agreement, executed on an annual basis, the Confidentiality Agreement executed at the time she first joined Perficient remained in effect.

69.　　　In the Confidentiality Agreement, Hoffman agreed not to disclose any of Perficient's intellectual property:

> Except as may be expressly required by the Company, Employee shall not, either during Employee's employment by the Company or thereafter, directly or indirectly, disclose any Intellectual Property to any other person or use any Intellectual property for Employee's own benefit or for the benefit of others.

> *Exhibit 2*, p. 2.

70.　　　Hoffman further acknowledged her position required Perficient to provide her with Confidential Information and promised "to hold in the strictest confidence and use Employee's best efforts and the utmost diligence to protect and safeguard all Confidential Information[.]"  Hoffman further agreed "not to use, directly or indirectly, (except as may be required for Employee to perform Employee's duties for the Company) or to disclose to any person or entity any Confidential Information, without the prior and specific written authorization of the Company." *Exhibit 2*, p. 3.

71.　　　Confidential Information, defined to include, without limitation and regardless of whether such information or material is explicitly identified or marked as confidential or proprietary:

> (i)　　technical information of the Company, its affiliates, its customers or other third parties, including computer programs, software, databases, know-how, formulae, compositions, processes, discoveries, machines, inventions, designs, developmental or experimental work, improvements, original works of authorship, training programs and procedures, diagrams, charts, and similar items;

16

    (ii)     business information of the Company, its affiliates, its customers or other third parties, including business pans, compensation data, sales data, customer lists and information, supplier lists, prices and costs, credit information, financial data, information regarding the skills, compensation, and contact information of employees and contractors of the Company, and similar items;

    (iii)    information relating to the future plans of the Company, its affiliates, its customers or other third parties, including marketing strategies, sales plans, pending projects and proposals, research and development efforts and strategies, and similar items;

    (iv)    other valuable, confidential information and trade secrets of the Company, its affiliates, its customers or other third parties; and (v) any information or material that grants an advantage over others in the industry by virtue of not being generally known.

*Exhibit 2*, p. 3.

72.      Hoffman also agreed to the non-solicitation of Perficient's customers as well as her obligation to refrain from providing any competitive products or services to Perficient customers for a period of twenty-four months:

    (a) directly or indirectly: (i) solicit (or assist another in soliciting) any Covered Client or Prospective Client for Competitive Products or Services, or (ii) provide (or assist another in providing) Competitive Products or Services to any Covered Client or Prospective Client[.]

*Exhibit 2*, p. 3.

73.      Hoffman also agreed to the non-solicitation of Perficient's employees for a period of twenty-four months following his separation from Perficient:

    (b) directly or indirectly: (i) encourage (or assist another in encouraging) any employee, contractor, consultant, supplier, or vendor of the Company to terminate his or her relationship with the Company; or (ii) solicit (or assist another in soliciting) for employment or other personal service engagement any employee, contractor, or consultant of the Company or any person who was an employee, contractor, or consultant of the Company at any time during the last twelve (12) months of Employee's employment with the Company.

*Exhibit 2*, p. 3-4.

74.     "Competitive Products or Services" under the Confidentiality Agreement includes "any products or services being offered, marketed, or actively developed by the Company as of the date of the termination of Employee's employment with the Company for any or no reason." *Exhibit 2,* p 4.

75.     "Covered Client or Prospective Client" under the Confidentiality Agreement means "(i) any of the Company's clients or Prospective Clients with whom the Employee had contact (whether in person, by phone, by e-mail, or otherwise) as an employee of the Company during the last twelve (12) months of the Employee's employment; and (ii) and of the Company's clients or Prospective Clients about whom Employee had an Confidential Information during the last twelve (12) months of Employees employment.  *Exhibit 2*, p. 4.

76.     Hoffman agreed that irreparable damage would result to Perficient in the event of any breach of any covenant under the Confidentiality Agreement, and that in the event of breach, Perficient would be entitled to "an injunction to restrain the violation of these covenants of confidentiality and non-disclosure[.]"  *Exhibit 2*, p. 4.

77.     Hoffman further acknowledged that the restrictions on competition contained in the Confidentiality Agreement are reasonable and do not impose a greater restraint than is necessary "to protect the Confidential Information, goodwill, and other legitimate business interests" of Perficient, and are not unduly burdensome to Hoffman.  *Exhibit 2*, p. 4.

**F. The end of Hoffman's employment by Perficient and commencement with Slalom.**

78.     In Spring 2022, Hoffman expressed a desire to Perficient to relocate from Atlanta, Georgia, where her office and most of the employees under her supervision were based, to Florida.  Perficient informed Hoffman she would not be able to retain her employment if she moved away from the office and team of employees she was responsible for managing.

79.     Hoffman elected to go forward with the move to Florida and her employment with Perficient terminated effective approximately July 1, 2022.  Perficient reminded Hoffman of her Confidentiality Agreement and Non-Competition Agreement obligations by letter dated June 24, 2022.  A copy of the letter is attached as *Exhibit 4*.

80.     However, despite Hoffman's covenants not to compete with Perficient, on September 30, 2022, Hoffman sent an email correspondence to Perficient's Vice President of People, Andrea Lampert, indicating she accepted a position with Slalom's Tampa, Florida office as a Client Services Director.  A copy of Hoffman's email is attached as *Exhibit 5*.

81.     In her September 30, 2022 email, Hoffman acknowledged she was bound by her "executed Noncompete and Restricted Stock Agreement."  *Exh. 5*.

82.     However, Hoffman claimed her employment would not violate those agreements on the sole basis Perficient does not maintain a physical brick-and-mortar office in Florida. Hoffman claimed she would "be working on select clients in the Florida market where Perficient does not have a local office."  *Exh. 5*.

83.     On information and belief, as a Slalom employee in a client facing role, Hoffman will be participating in the active marketing, selling and/or implementation of technology consulting and software implementation services on behalf of Slalom within Florida, a geographic area under her former scope of responsibilities at Perficient.

**G. Perficient's good faith attempts to confirm Hoffman's compliance with her restrictive covenants.**

84.     Because Hoffman's job duties were competitive with her job duties at Perficient, Perficient sent correspondence through counsel on or about September 30, 2022, which (1) reminded Hoffman and informed Slalom regarding Hoffman's restrictive covenants, and (2) requested Hoffman rescind the employment offer from Slalom that would necessarily result in

19

the breach of her restrictive covenants with Perficient.  Copies of Perficient's September 30, 2022 correspondence with Hoffman and Slalom are attached as *Exhibits 6* and *7.*

85.     On October 6, 2022, counsel for Hoffman responded via correspondence in which, among other arguments, Hoffman repeated her assertions that her proposed services for Slalom would not be competitive because she would be working in the Tampa area.  A copy of Hoffman's correspondence is attached as *Exhibit 8*.  The correspondence erroneously asserted "At no time has Ms. Hoffman provided services to any Perficient client located within that metropolitan area." *Exh. 8*, p. 3.

86.     On October 12, 2022, Hoffman's counsel provided what he asserted to be a "very general description" of Hoffman's proposed position.  On October 13, Perficient responded that the job duties in the description would result in a number of actual or threatened breaches to Hoffman's agreements and would necessitate competitive duties.  A redacted copy of the email correspondence omitting Perficient customer names is attached as *Exhibit 9.*

87.     Specifically, the responsibilities and qualifications set forth in the job description demonstrate the role of Client Service Leader has responsibilities for sales, marketing, and growth of Slalom's software consulting and implementation services and are not limited to existing client services.  Those sales-facing responsibilities include:

    a.  Opportunity identification, i.e. sales responsibilities;

    b.  Sales Pipeline Management, including "generating sales opportunities" for Slalom, and responding to RFP requests;

    c.  Identifying opportunities for growth of Slalom's offerings and the strategic decision making necessary to set the direction for that growth;

    d.  Driving business development;

20271656.v1

    e.   Assigning tasks when resources are between projects, i.e. reassigning software consulting and delivery employees to other projects, potentially for other or new clients.

*Exh. 9.*

88.    In light of these actual and threatened breaches, Perficient renewed its request for documents to demonstrating restrictions on Hoffman's proposed duties necessary to protect Perficient's interests.   Counsel for Hoffman informed Perficient those documents were in Slalom's exclusive custody and control.

89.    Therefore, October 18, 2022, counsel for Perficient sent additional email correspondence to Slalom, requesting basic personnel and hiring documentation necessary to evaluate Hoffman's duties, including: (1) a copy of the original job posting or advertisement for Hoffman's position; (2) an organizational chart showing Hoffman's proposed position within Slalom; (3) Hoffman's application materials submitted to Slalom or its recruiter; (4) communications between Hoffman and Slalom's internal or external recruiter; (5) communications between Hoffman and Slalom's hiring manager or interviewer; (6) documents regarding Hoffman's proposed job duties, including any modified or individualized job description; (7) internal documents or communications regarding the position or scope of the position prior to Hoffman's recruiting; (8) documents regarding Hoffman's restrictive covenants, including measures put in place to prevent breaches of Hoffman's agreements; and (9) a complete list of clients to be serviced by Hoffman and her proposed direct reports.   A copy of Perficient's email correspondence is attached as *Exhibit 10.*

90.     On October 20, 2022, Slalom's counsel responded that it would not be providing any of the requested documents and expected Perficient to communicate solely with Hoffman and her counsel. A copy of Slalom's email correspondence is attached as *Exhibit 11*.

91.     Therefore, Perficient renewed its request to information to Hoffman.  She was again unable or unwilling to provide any of the requested materials.

92.     Contrary to Hoffman's and Slalom's prior representations, the job description and job posting materials confirm Hoffman's job duties are competitive with her former responsibilities at Perficient.

**H.  Perficient's proposed consent injunction.**

93.     Due to Hoffman's and Slalom's repeated refusals to provide any of the documents necessary to evaluate the scope of Hoffman's competitive duties and the impact on Perficient's protectible interests, Perficient proposed the parties enter into a consent injunction regarding the scope of her responsibilities at Slalom.  A redacted copy of the proposed consent injunction excluding the Perficient customers and Slalom customers at issue is attached as *Exhibit 12*.

94.     The proposed consent injunction would allow Hoffman to be employed by Slalom and service the select clients Hoffman represented to Perficient she was engaged to work with, while restricting her from other client projects harmful to Perficient's interests, in particular those clients she previously serviced while employed by Perficient.

95.     Hoffman rejected the proposed consent injunction.

96.     Because neither Hoffman nor Slalom provided any of the requested documents and because Hoffman rejected Perficient's proposed consent injunction, Perficient informed both Hoffman and Slalom by email on November 2, 2022 that absent a resolution any employment of

Hoffman by Slalom in the proposed position would be a breach of her agreements.  Perficient's emails are attached as *Exhibit 13* and *14*.

97.     On November 10, 2022, Hoffman's counsel informed Perficient's counsel that despite her prior representations that she had no start date until the dispute was resolved, she had in fact already started her employment with Slalom.

98.     Perficient had no notice prior to November 10, 2022 that Hoffman had commenced her employment.  Perficient reasonably relied on Hoffman's and Slalom's representations that she had no start date yet.

### I. Hoffman's continued competitive employment presents a threat to Perficient's protectible interests.

99.     On the basis of her former employment with Perficient, Hoffman is in possession of confidential non-public business information of Perficient, including its sales strategies, pricing structure, the details of its contractual relationships with partners and vendors, non-public financial information, sales volume and profitability data, margins, costs, marketing strategies, customer contacts, information regarding the future plans and development strategies of Perficient, and information regarding Perficient's capabilities and personnel.

100.     Hoffman will be able improperly use the Confidential Information for the benefit of Slalom and the detriment of Perficient, either intentionally, or via inevitable disclosure.

101.     Despite Perficient's requests, Hoffman and Slalom have failed to identify any measures either party have taken to isolate Hoffman or her direct reports from Slalom's outside sales or prevent the actual and/or inevitable disclosure of Perficient's confidential information.

102.     On information and belief, in her capacity as a Slalom employee, Hoffman may use contacts with customers and business partners she obtained while in the employment of

20271656.v1

Perficient and may use or rely on confidential and proprietary information Hoffman possesses about Perficient's offerings and business strategies.

103.     Slalom has knowledge that Hoffman was subject to non-competition, non-solicitation, and non-disclosure obligations under the Non-Competition Agreement and willfully hired her despite that knowledge.

104.     Despite both Hoffman's and Slalom's knowledge of the breach, as of the date of this complaint, Hoffman remains employed by Slalom as a Client Services Director.

105.     This continued employment has and continues to cause Perficient irreparable harm and damage.

106.     In addition, Perficient will be irreparably harmed if and when Hoffman is able to inform Slalom of or develop and implement at Slalom (a) Perficient's proprietary, internal strategies for identifying potential clients most likely to value Perficient's services' and products' attributes and advantages; (b) Perficient's proprietary, internal programs, policies and written strategies for development of customer targets; (c) Perficient's proprietary, internal program, policies and written strategies for business maintenance with customer targets, once new business has been obtained; and (d) otherwise provide and make available to Slalom the partner and customer contacts and customer lists that, upon information and belief, Hoffman has continued to maintain subsequent to her resignation from Perficient.

## <u>COUNT I – BREACH OF CONTRACT – NON-COMPETITION AGREEMENT</u>

### <u>(Hoffman)</u>

107.     All preceding paragraphs are incorporated by reference.

108.     The Non-Competition Agreement is a valid and enforceable contract between Perficient and Hoffman that includes, among other things, post-termination non-competition

obligations on the part of Hoffman in exchange for due consideration, including restricted stock awards.

109.     Hoffman breached her contractual duties described in the Non-Competition Agreement by, among other things, engaging in the following:

   a.   Hoffman is performing competitive duties as an employee within the restricted area for a competing business in obtaining employment with Slalom, a direct competitor of Perficient;

   b.   Hoffman is engaged in a competing business within the restricted area by offering the sale of identical competing services, namely technology consulting and software implementation in breach of her obligation not to perform competitive duties or offer competitive products or services.

   c.   By performing services for a competitor, Hoffman may fail to abide by and comply with the restrictions on the use and disclosure of Perficient's Confidential Information by intentionally and/or inevitably disclosing Perficient's Confidential Information to Slalom, including its sales strategies, pricing structure, the details of its contractual relationships with customers and partners, non-public financial information, sales volume and profitability data, margins, costs, marketing strategies, customer contacts, and information regarding the future plans and development strategies of Perficient.

   d.   By performing services for a competitor, Hoffman may solicit or assist in soliciting a covered client for competitive products or services by using her prior access to Perficient's Confidential Information to directly or indirectly solicit Perficient's current and prospective customers on behalf of Slalom, in direct competition with Perficient;

   e.   Upon information and belief, Hoffman has misappropriated other confidential business information of Perficient for the benefit of a competitor, seeking to impair Perficient's ability to compete in the software implementation and consulting market.

110.     Perficient provided all consideration required by the terms of the Non-Competition Agreement, in cash and in kind, and otherwise performed all covenants, obligations and other conditions precedent to its right to enforce the agreements against Hoffman.

20271656.v1

111.     Upon information and belief, Hoffman's violation of her post-termination non-competition and non-disclosure obligations was willful and knowing.

112.     Despite Hoffman's knowledge of the breach, Hoffman has continued her employment with Slalom and her other actions in violation of the non-competition and non-disclosure obligations.

113.     Perficient has been damaged and will continue to be damaged as a direct and proximate result of Hoffman's actions, in that Hoffman has disclosed and/or will inevitably disclose Perficient's trade secrets and other proprietary and confidential information in the employ of Slalom, Perficient's direct competitor.

114.     Perficient is entitled to recover as damages all consideration paid in exchange for the Non-Competition agreement, including the value of Perficient stock issued to Hoffman as consideration for her breached obligations.

115.     As agreed by the parties, and as contemplated by the Non-Competition Agreement, Perficient has and will continue to suffer irreparable harm as a direct result of Hoffman's actions unless she is preliminarily and permanently enjoined from continuing to be employed by Slalom and otherwise continue with the actions in violation of her non-competition, non-disclosure, and non-solicitation obligations.

116.     Among other things, Hoffman may continue to inform Slalom of, use, and implement on Slalom's behalf Perficient's trade secrets and confidential information and, thus, provide Slalom with knowledge and information that cannot be revoked.  In addition, the customer contacts generated, target customer information, and partner contacts provided to Slalom cannot be revoked.

20271656.v1

117.     Injunctive relief preventing Hoffman from working at Slalom during the non-competition and non-solicitation period is a reasonable and justified restriction because in exchange for valuable consideration, Hoffman (a highly compensated and sophisticated individual) acknowledged and agreed to the following:

a.    That irreparable damage would result to the Perficient in the event of the breach of any covenant in the Non-Competition Agreement;

b.    That in the event of such breach, Perficient would be entitled to an injunction to restrain the violation of the covenants;

c.    That the restrictions on competition contained in the Non-Competition Agreement were reasonable;

d.    That the restrictions on competition are not unduly burdensome to Hoffman;

e.    That Perficient competes throughout North America (among other countries) and that the scope of the limitations is reasonable and necessary for the protection of the Perficient's Confidential Information, goodwill, and other legitimate business interests;

f.    That the restrictions allow Hoffman an adequate number and variety of employment alternatives, based on her varied skills and abilities;

g.    That she was willing and able to engage in other employment not prohibited by the Non-Competition Agreement.

118.     Injunctive relief preventing Hoffman from working at Slalom during the non-competition and non-solicitation period is a further reasonable and justified restriction because:

a.    During her employment with Perficient, Hoffman developed business relationships for the purpose of selling its technology consulting and software implementation services and gained knowledge regarding Perficient's non-public business plans and strategies.

b.    Slalom is a direct competitor seeking to expand its market share in selling technology consulting and software implementation services.  Therefore, Perficient has a clear interest in preventing access to Perficient's trade secrets and internal proprietary confidential information, because Slalom would be in a position to use such trade secrets and confidential information to cause Perficient irreparable harm.

c.    Hoffman's obligations have not and should not cause her any difficulty in finding employment that does not violate the restrictions.

27

      d.    The sales and marketing strategies, policies and procedures, the customer and vendor contacts, and other confidential information developed and used by Hoffman and those employees managed by Hoffman while at Perficient remain substantially the same in the time since Hoffman's departure and will continue to be substantially the same from now until the end of Hoffman's non-competition, non-solicitation, and non-disclosure period.

119.     Pursuant to the Non-Competition Agreement, in the event that Hoffman is in violation of her post-termination non-competition, non-solicitation, and non-disclosure obligations and Perficient is required to file suit to enforce the same, the non-competition and non-solicitation period is to be extended for the same amount of time that the suit is pending. *Exhibit 1*, ¶ 16(c).

120.     Perficient has incurred attorneys' fees and costs in connection with its efforts to enforce the Non-Competition Agreement against Hoffman and will continue to incur additional attorneys' fees and costs until this matter is resolved.

WHEREFORE, Plaintiff Perficient, Inc. respectfully prays for a judgment against Defendant Hoffman as follows:

      a.    Awarding Perficient damages in an amount to be proven at trial in excess of $75,000, plus post-judgment interest from the date of judgment until the entire amount is paid in full at the applicable statutory rate;

      b.    A declaration that Hoffman's employment by Slalom and activities on behalf of Slalom, including the solicitation of Perficient's customers, potential customers, and partner on behalf of Slalom constitute a violation of her non-competition, non-solicitation, and non-disclosure obligations under the Non-Competition Agreement;

      c.    A preliminary injunction and permanent injunction:

i.   Enjoining Hoffman from being employed by or performing any work, task or other employment-related service on behalf of Slalom, while this suit is pending and for a period of twenty-four months after this suit is fully and completely resolved, except those limited duties for a selected number of existing Slalom clients;

ii.  Enjoining Hoffman from being employed by or performing any work, task or other employment-related service on behalf of any other competitor of Perficient, while this suit is pending and for a period of twenty-four months after this suit is fully and completely resolved;

iii. Enjoining, both while this suit is pending and for a period of twenty-four months after this suit is fully and completely resolved, Hoffman from directly or indirectly contacting or soliciting any person or company that was a customer or had been solicited by Perficient as a potential customer of Perficient for a twenty-month period prior to the end of Hoffman's employment;

iv.  Enjoining, both while this suit is pending and for a period of twenty-four months after this suit is fully and completely resolved, Hoffman from directly or indirectly contacting or soliciting any person that was any employee, contractor, or consultant of Perficient or any subsidiary as a potential customer of Perficient at the end of Hoffman's employment; and

v.   Enjoining, both while this suit is pending and for a period of twenty-four months after this suit is fully and completely resolved, Hoffman from taking any action which might induce any business or person dealing with

20271656.v1

Perficient to cease dealing with Perficient, reduce its level of business with Perficient, or otherwise begin dealing with someone other than Perficient.

d.      Awarding Perficient its reasonable attorneys' fees and costs incurred and that will continue to be incurred in connection with enforcing Hoffman's obligations under the Non-Competition Agreement; and

e.      For such other and further relief as this Court deems just and proper.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT – NON-COMPETITION AGREEMENT

### (Slalom)

121.    All preceding paragraphs are incorporated by reference.

122.    The Non-Competition Agreement executed by Hoffman is a binding contract between Hoffman and Perficient.

123.    Slalom had actual notice of both the existence and terms of the Non-Competition Agreement at the time Hoffman commenced her employment.

124.    Upon information and belief, Slalom has knowingly and willfully interfered with Perficient's contractual relations with Hoffman by engaging in conduct designed to induce Hoffman into breaching her contracts with Perficient.

125.    Slalom's interference with Perficient's contracts with Hoffman was improper in motive and/or means.

126.    Perficient has been damaged and will continue to be damaged and irreparably harmed as a result of Slalom's tortious interference.

127.    In taking these actions, Slalom acted intentionally, maliciously, or in reckless disregard of the rights of Perficient such that an award of punitive damages is justified.

30

WHEREFORE, Plaintiff Perficient, Inc. respectfully prays that the Court grant it a judgment against Defendant Slalom in an amount to be proven at trial, plus post-judgment interest from the date of judgment until the entire amount is paid in full at the applicable statutory rate, awarding Perficient its costs, and for such other and further relief as the Court deems just and proper.

## COUNT III – CIVIL CONSPIRACY

### (Hoffman and Slalom)

128.     All preceding paragraphs are incorporated by reference.

129.     As Managing Director, Hoffman was intimately involved in many of Perficient's highly proprietary business strategies, and was privy to Perficient's specific plans, goals, and methodologies for the coming years.

130.     Upon information and belief, Slalom was aware of Hoffman's intimate knowledge and the involvement Hoffman had in developing Perficient's current and future sales and business strategies for its software consulting and implementation solutions.

131.     Slalom knew Hoffman executed an agreement or agreements whereby she could not share confidential information with a competitor or work for Slalom for a certain time from the date of her separation from Perficient.

132.     Upon information and belief, Slalom has conspired with Hoffman to breach the Non-Competition Agreement and/or Confidentiality Agreement she has with Perficient, which will inevitably lead to the misappropriation of Perficient's confidential trade secrets.

133.     Perficient has been harmed and will continue to be irreparably injured by Hoffman's and Slalom's concerted actions.

WHEREFORE, Plaintiff Perficient, Inc. respectfully prays that the Court grant it a judgment against Defendants Hoffman and Slalom in an to be proven at trial, plus post-judgment interest from the date of judgment until the entire amount is paid in full at the applicable statutory rate, awarding Perficient its costs, and for such other and further relief as the Court deems just and proper.

SANDBERG PHOENIX & von GONTARD P.C.

By:   _/s/ Benjamin R. Wesselschmidt_
       Lyndon Sommer, #44005
       Benjamin R. Wesselschmidt, #66321
       600 Washington Avenue - 15th Floor
       St. Louis, MO  63101-1313
       314-231-3332
       314-241-7604 (Fax)
       lsommer@sandbergphoenix.com
       bwesselschmidt@sandbergphoenix.com

       _Attorneys for Plaintiff Perficient, Inc._

20271656.v1

## <u>VERIFICATION</u>

I, **Jason Hudnall**, being of lawful age, hereby declare under penalty of perjury, as follows:

1.      I am the Area Vice President for GEO Markets at Perficient, Inc.

2.      The facts alleged in the Verified Complaint are based upon matters known personally to me and/or on information provided by others, and are true and correct to the best of my knowledge, information, and belief.


Executed within the United States of America on this _**14**__ day of November, 2022.


_____
Area Vice President for GEO Markets